John R. Tracy, Appellee, v. Palmetto Fire Insurance Company of Sumter, South Carolina, et al., Appellants.

December 14, 1928.

Rehearing Denied March 8, 1929.

*Kelleher & Mitchell,* for appellants.

*Mitchell, Files & Mulholland* and *Mitchell & Mitchell,* for appellee.

Wagner, J.—On a policy of fire insurance issued by the defendant the Palmetto Fire Insurance Company, the plaintiff in this action seeks to recover for damage to his automobile, alleged to have been caused by fire. By the terms of the policy, the automobile is insured against direct loss or damage from fire, arising from any cause whatsoever. The liability of the defendant the Automobile Insurance Company is by reason of having reinsured the risks of the former company. It is the contention of the defendants that the loss or damage caused by the fire is only the sum of $132, and that the remainder of the damage was

by reason of breakage, for which they are not liable. Upon trial, the jury returned a verdict in favor of the plaintiff for the sum of $650, plus interest of $22.10. Judgment was rendered against the defendants for said sums and the costs. From this judgment, the defendants have appealed.

The appellants contend that the court erred in overruling their motion for a directed verdict, made at the close of plaintiff's evidence, and renewed at the close of all of the evidence, and in its instructions to the jury upon the question of proximate cause.

For a full understanding of the contentions of the parties, we will first visualize the facts leading up to the damage to the car. The automobile was a Chrysler left-hand-drive five-passenger sedan, provided with four-wheel brakes. At the time in question, it was being operated by O'Reilly, an experienced driver, the owner being in the front seat, to the right. The car was pursuing a westerly course, on a paved highway about 18 feet wide, at the rate of 30 to 35 miles per hour, when suddenly there were a couple of small explosions, which attracted the attention of the occupants of the car; and, on looking downward, they discovered that a portion of the car was on fire, the flames coming upward in the vicinity of their feet. The driver testified:

"At the time I heard the explosion in the motor of the Tracy car, and saw the smoke and flames, it shocked me for a moment, and I was startled and frightened. I knew there was gasoline stored in the motor of the automobile. When I saw the flames and heard the explosion, I instinctively threw out the clutch and put on the brake. The car, for some reason, swerved or jumped across the road to the south, and went into the ditch. I was paying attention to the driving before the fire. I did nothing, after seeing the fire, except to put on the brakes and loosen the clutch. The car was working fine just before the fire. Q. Can you state to the jury what was the cause of the car, going across the road into the ditch? A. The only thing, in applying the brake, I thought the fire was on the footboard. The fire was right along the side of the clutch. I had one foot on the clutch. I knew the vacuum tank was there, full of gasoline. There was a large amount of lubricating oil used in connection with the motor. The lubricating oil is inflammable. Q. You have no idea what was the cause of going into the ditch?

A. Not unless it was from the brakes. Q. You think the cause of going into the ditch was your forcing down of the brakes too sudden, and threw the car over to one side? A. Yes, sir."

The car was turned over in the ditch, and the occupants extricated themselves therefrom, and extinguished the fire. The car was badly wrecked, parts of it being burned, and other portions being wrenched, strained, scarred, and broken. There is testimony that the parts burned or damaged by fire could have been repaired for the sum of $132, but it is manifest that the entire damage was a much greater amount.

The foregoing statement of facts presents the situation sufficiently for the determination of the questions presented. There is no contention made by the defendants that the verdict is excessive, provided they are liable for the entire amount of the damage. Their contention is that the fire was not the proximate or responsible cause for the breakage, etc., to the car by reason of its landing in the ditch, but that the cause of said damage was the application of the brakes by the operator of the car.

The court told the jury in the instructions that "proximate cause" is the producing cause; that, as applied to this case, it does not necessarily mean that the fire was the sole cause of the injury and damage to the car; that a fire in such case may be the proximate cause of the damage, and still not be the sole cause; that, to be the proximate cause, however, it must appear that, had it not been for the fire, the loss and damage of which complaint is made would not have occurred. The court further told the jury of defendants' contention as to the breakage, etc., and instructed that, if they found that a fire broke out in the car at the time and place in question, and that, as a result of said fire, the car ran into the ditch,—that is, that the fire, and not some other agency or means, was the proximate cause, as thereinbefore defined, of the car's going into the ditch and sustaining the injury and damage complained of,—then the plaintiff would be entitled to recover the damages so sustained; that, if the fire was the direct and proximate cause of the car's going into and overturning in the ditch, then the plaintiff would be entitled to recover, not only for the damage resulting to his car from the burning thereof, but also for any breakage or injury to the car as the result of its going into the ditch; but that, if they

found that the car's going into the ditch was due to some act of the driver's, independent of the alleged fire,—that is, if the act or acts of the driver did not directly grow out of and result from said fire,—then such act or acts on the part of the driver, and not the fire, would be the proximate cause of the car's going into the ditch; and that, in such case, any damage resulting to the car by the breakage, etc., resulting from its going into and overturning in the ditch would not constitute an element of damages for which plaintiff could recover; that whether the fire or the act of the driver was the proximate cause of the car's going into the ditch was for them to determine from the evidence.

If, under the record, the aforesaid instructions are correct, then the contentions of the appellants are without merit. The question is, Could the jury be allowed to find that the entire damage was caused by the fire, and were the court's instructions relative to proximate cause unobjectionable?

An insurance policy should be construed most favorably to the insured, and against the insurer. *Githens v. Great American Ins. Co.*, 201 Iowa 266. In the cited case we said:

"It is a familiar rule that an insurance policy is to be construed most favorably to the insured, and against the insurer. The situation is not one where two parties sit down and draft a contract between them. The insurance business has become 'standardized.' The policyholder goes to an insurance company to buy 'fire insurance' on his property. The insurance company undertakes to sell him 'fire insurance.' A policy is delivered to the insured, with certain provisions therein incorporated, and taken by the insured without modification or change on his part. Appellee bought 'fire insurance.' The company undertook, by its policy, to insure him against *all damage caused by fire.* This referred to all damage resulting from a hostile fire to the property."

The fire in question was not a friendly, but a hostile, fire. See *Githens v. Great American Ins. Co.*, supra.

"The word 'direct,' in the policy, means merely 'immediate,' or 'proximate,' as distinguished from 'remote.'" *Ermentrout v. Girard Fire & Marine Ins. Co.*, 63 Minn. 305 (65 N. W. 635, 56 Am. St. 481).

Proximate loss includes not only losses which are directly caused by the fire itself, but also losses of which the fire is the efficient cause, by setting in motion other agencies. 26 Corpus Juris 341. Thus, injury resulting from water or chemicals in extinguishing the fire has been held to be the direct or proximate result of the fire, and covered by the policy. 26 Corpus Juris 341; *Cummings v. Pennsylvania Fire Ins. Co.*, 153 Iowa 579. Loss by theft consequent upon the confusion attending a fire or injury to goods in their removal from the building has been held to be a direct consequence of the fire. 26 Corpus Juris 342; *Cummings v. Pennsylvania Fire Ins. Co.*, supra; *Newmark v. Liverpool & London Fire & Life Ins. Co.*, 30 Mo. 160 (77 Am. Dec. 608).

"Where a fire, whether in the insured building or in another building, causes such peril to insured goods as to necessitate their removal, loss or damage resulting from such removal is covered by a policy on the goods, the fire being regarded as the proximate cause." 26 Corpus Juris 341.

In *White v. Republic Fire Ins. Co.*, 57 Me. 91 (2 Am. Rep. 22), it was held that, where insured goods are removed from a building apparently in imminent danger of being destroyed by fire, the insurers are liable for the reasonable damage and expense of removal, although the building is not in fact burned. Other cases holding to the same effect could be cited. In all of the foregoing cases, the damage by the water or chemical, the theft of the goods, or the damage by removal, was caused by some agency other than the fire, but the fire was held to be the proximate cause, or the cause responsible for the loss or damage. In other words, had it not been for the fire, the property would not have been damaged by the water or chemical or the removal, or lost by reason of the theft. In *Cummings v. Pennsylvania Fire Ins. Co.*, supra, we held that damage to goods precipitated into water and debris by the falling of a wall of the building struck by lightning was the proximate result of the lightning. In *Githens v. Great American Ins. Co.*, supra, we held that the damage resulting solely from an explosion caused by a hostile fire was the proximate result of the fire. In *Hapeman v. Citizens' Mut. Fire Ins. Co.*, 126 Mich. 191 (85 N. W. 454, 86 Am. St. 535), horses were insured against lightning, but not against

fire. Lightning struck the barn, and a fire ensued, which consumed the barn, with the horses; and it was held that the destruction of the horses was the proximate result of the lightning. In *Russell v. German Fire Ins. Co.*, 100 Minn. 528 (111 N. W. 400, 10 L. R. A. [N. S.] 326), a fire destroyed the adjoining building, leaving the wall extending above plaintiff's building several stories. A week later, because of a strong wind, that portion of the wall standing above plaintiff's building fell thereon, causing considerable damage. Plaintiff's building was insured against fire, and he brought suit against the insurance company; and it was held that the trial court properly permitted the jury to find that the damage to plaintiff's building was the proximate result of the previous fire. See, also, *Ermentrout v. Girard Fire & Marine Ins. Co.*, 63 Minn. 305 (65 N. W. 635, 56 Am. St. 481). It is thus held in said cases that, in order to render a fire the proximate cause of loss or damage, it is not necessary that any part of the insured property should be actually ignited or consumed by fire. In the *Russell* case, supra, it is stated:

"In all probability, the wall would have stood until the building was reconstructed, had it not been for the wind which came at a critical time. Although the later agency in the work of destruction, was it [the wind] the real cause of the damage? The wind was not the cause, if it was an intervening agency which could reasonably have been foreseen. * * * Winds such as arose December 20 were liable to occur at any season of the year. It certainly does not conclusively appear from the evidence that such an event should not have been contemplated by the parties when they entered into the contract."

In *Lynn Gas & Elec. Co. v. Meridan Fire Ins. Co.*, 158 Mass. 570 (33 N. E. 690, 35 Am. St. 540), we find the following appropriate language:

"It has often been necessary to determine, in trials in court, what is to be deemed the responsible cause which furnishes a foundation for a claim when several agencies and conditions have a share in causing damage; and the best rule that can be formulated is often difficult of application. When it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in time

or place to the result is necessarily to be chosen. *Freeman v. Mercantile Accident Association,* 156 Mass. 351. The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause referred to in the cases.''

With reference to proximate cause, we quote from *Russell v. German Fire Ins. Co. of Pittsburg,* supra, the following excerpts:

''Whatever may have been the original meaning of the maxim *'Causa proxima et non remota spectatur,'* it has been clearly settled by a long line of decisions that what is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause. * * * In speaking of the rule as applied to insurance cases, it is said [Vol. 5] (Section 2832, Joyce, Ins.) : 'It may be generally stated that the loss in insurance cases must be proximately caused by a peril insured against, and that the contract does not contemplate an indemnity to the assured where the peril is the remote cause of loss.' In discussing the liability to misapply the maxim, Mr. Phillips (Phillips Ins., Section 1132) observes: 'In case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is or is not in activity at the consummation of the disaster.' * * * In this connection, it should be noted that it is not necessary, under policies of this character, that the damage should be occasioned by direct contact with the fire. To render the fire the immediate or proximate cause of the loss or damage, it is not necessary that any part of the insured property actually ignited or was consumed by fire. * * * The inquiry must always be whether there was any intermediate cause, disconnected from the primary fault, and self-supporting, which produced the injury.''

It is our conclusion from the authorities that, when the fire can be said to be the primary, the real, producing, predominant, or responsible cause of the loss, then it may properly be said to be the proximate cause of the same.

It is a matter of common knowledge that cars take fire while

in use upon the public highway. Said fact, and the additional fact that the operator of a car on fire would instinctively act in much the same manner as did O'Reilly, the driver of the car in the instant case, were certainly reasonably to be foreseen by the insurer. The jury could well find that the fire caused O'Reilly to act as he did; that, independently of the fire, he would not have so acted. When he discovered the fire, he had good reason to be frightened. His life was at stake. The jury was warranted in finding that the fire was the cause of the act which landed the car in the ditch, and of the resulting damage.

The instructions given by the trial court as to proximate cause were in conformity with the law. The jury has found that the fire was the predominant, responsible, or proximate cause of the entire damage to the car.

The judgment of the trial court is correct, and it is hereby affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, and MORLING, JJ., concur.